UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEITH  POLAND,<br>K. R. by and through his parent/next best friend,<br>Mike Rose, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-00954-TWP-DML |
| | ) | |
| NORTHWEST HENDRICKS SCHOOL<br>CORPORATION,<br>RICHARD KING Superintendent, in his<br>Official and Individual Capacities,<br>ADAM BENNER Principal, in his Official and<br>Individual Capacities,<br>DON DORRELL Athletic Director, in his<br>Official and Individual Capacities,<br>CONNIE BOWMAN School Board President,<br>in her Official and Individual Capacities,<br>STEVE SPRECHER School Board Vice-<br>President, in his Official and Individual<br>Capacities,<br>BRAD WILLIAMS School Board Secretary, in<br>his Official and Individual Capacities,<br>JUDY PIGNEL School board Member, in her<br>Official and Individual Capacities,<br>CINDY GRIFFITH School Board Member, in<br>her Official and Individual Capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING INJUNCTIVE RELIEF AND
## GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Plaintiffs', Keith Poland and K.R., a minor child by

father Mike Rose (collectively, "the Students") Motion for Preliminary Injunction (Filing No. 14)

and Defendants' Motion to Dismiss for Failure to State a Claim (Filing No. 20).  On September

25, 2015, this Court held a hearing on both motions.  At the hearing, the Court granted Northwest

Hendricks  School  Corporation's  motion  to  dismiss  and  denied  the  Students'  motion  for

preliminary injunction.  (*See*, Filing No. 38.)  The Court now submits its findings of facts and conclusions of law.

## I. <u>FACTS</u>

The following facts, taken directly from the Students' Complaint, are accepted as true for purposes of the motion to dismiss and all reasonable inferences are drawn in a light most favorable to the Students.  *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Keith Poland and K.R. are students at Tri-West High School in Pittsboro, Indiana ("Tri West"), which is a part of Northwest Hendricks School Corporation. Both participated in extracurricular, interscholastic football and track.  During the 2014-15 school year, Tri-West "distributed and/or made available" to the student body and parents the Tri-West High School Parent-Student Informational Handbook (the "Handbook").  (Filing No. 1 at ¶ 4.)  The sections of the Handbook at issue in this matter are Sections X.5A and X.6.

Section X.5A states, in relevant part, as follows,

**SECTION 5: CONSEQUENCES OF DRUGS AND ALCOHOL**
A. If it is proven or confirmed by school officials or coaches that a student had consumed an intoxicant or used drugs (non-prescribed or illegal) the student will be declared ineligible to participate in contests.

<u>FIRST OFFENSE</u>**:**
1) Immediate 30 calendar day suspension from Tri-West driving privileges. Student will also forfeit 20% of his/her current or future extra-curricular contests. The *Carry Over Rule will be used in instances where needed.

2) A meeting will be scheduled with the administration, coaches and parent(s)/legal guardian(s) to determine a plan of intervention for the student (Hereby referred to as the *intervention meeting*).

3) Students may return to practice, not competition, once a negative drug test has been provided, at student expense

<u>SECOND OFFENSE</u>**:**

2

1)  Suspension from all extra-curricular practices, contests and driving privileges for a minimum of 365 calendar days.

2) Enter a drug treatment/counseling program at parent/student expense
. . . .
**Violations of all Tri-West drug and alcohol policies are cumulative during the student's career at Tri-West Hendricks High School (grades 9-12).**

(Filing No. 21-1 at 57-58.)

Section X.6 states, in relevant part, as follows,

**SECTION 6: RETURNING TO EXTRA-CURRICULAR ACTIVITIES FOLLOWING A DRUG AND ALCOHOL RELATED SUSPENSION:**
A student must successfully complete all of the following requirements in order to return to any extracurricular activities following a drug or alcohol related suspension:

a.)  Complete the required suspension for the offense.

b.)  Successfully complete the required intervention(s) mutually agreed upon at the student's intervention meeting, at *parent/student expense*.

c.)  Practice must resume upon the completion of a negative drug screening, at *parent/student expense*.

d.)  Enroll in the Tri-West Mandatory Testing pool for one calendar year (365 days). This requires the student to participate in (10) mandatory drug tests from the date of the student's infraction for one calendar year, at *parent/student expense*.

(Filing No. 21-1 at 58-59) (emphasis in original).

On December 15, 2014, Tri-West Principal, Adam Benner ("Mr. Benner") determined that the Students had violated Section X.5A of the Handbook by smoking marijuana and imposed a "First Offense" penalty on both Keith Poland and K.R.  Specifically, Mr. Benner suspended the Students' driving privileges for thirty days and declared both ineligible to participate in twenty percent of the spring track season.

The Students alleged that Mr. Benner "breached his Legal Duty" owed to them, by failing to schedule and/or participate in an intervention meeting with the administration, coaches, and

parents and for failing to require a negative drug test.  They also alleged that Mr. Benner "has a history of not complying" with Sections X.6(b) and (c) of the Handbook.

On January 24, 2015, before the suspension period for the first offense had expired, Mr. Benner determined that the Students committed a second offense under Section X.5 of the Handbook by consuming alcohol.  The Students alleged that Mr. Benner should have imposed another "First Offense" penalty for this violation because an intervention meeting had not occurred and a negative drug test had not been provided for the first offense.  Mr. Benner imposed a "Second Offense" penalty, suspending their driving privileges and participation in all extracurricular activities and contests for three-hundred and sixty-five days.

The Students alleged that Mr. Benner, Tri-West Athletic Director, Don Dorrell, and the School District Superintendent, Richard King, failed to enforce the Handbook requirement of an intervention meeting with any student that abuses alcohol or drugs or their parents.  In addition, they alleged that School Board Members Connie Bowman, Steve Sprecher, Brad Williams, Judy Pingel, and Cindy Griffith "acquiesced" to this erroneous interpretation of the Handbook.

Ultimately, the Students allege that Northwest Hendricks School Corporation breached an implied contract by not following the procedures set forth in the Handbook.  They also alleged that Mr. Benner "breached the Handbook agreement" by not holding an intervention meeting, not creating a "plan of intervention," not attempting to secure a negative drug test, and "prematurely imposing a harsher 2nd offense penalty."  (Filing No. 1 at ¶¶ 37-39.)

## II. LEGAL STANDARD

### A. Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Granting a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it."  *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984).  When a district court considers whether to issue a preliminary injunction, the party seeking the injunctive relief must demonstrate that:  (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest.  *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal if the complaint fails to sets forth a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits."  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520, (7th Cir. 1990).  Accordingly, when analyzing a Rule 12(b)(6) motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Fed. R. Civ. P. 8 requires that a complaint set forth a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  At a minimum, the complaint

must give the defendant fair notice of what the claim is and the grounds upon which it rests; and the factual allegations must raise a right to relief above the speculative level. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009) (explaining that, consistent with the notice pleading standard, the purpose of the statement required by Rule 8 is to provide the defendant with fair notice of what the claim is and the grounds upon which it rests), *Tamayo*, 526 F.3d at 1081, 1083.

While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Bissessur*, 581 F.3d at 603.

Although this does not require heightened fact pleading of specifics, it does require the complaint to contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083 ("(a) plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible rather than merely speculative, that he is entitled to relief"); *Bissessur*, 581 F.3d at 603 ("(a) claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## III. <u>DISCUSSION</u>

Upon review of the facts, the evidence and the parties' arguments, the Court finds that the Students cannot demonstrate that the Handbook created either a contractual right or protectable constitutional interest; and, therefore, they cannot demonstrate legal support for their claim. As a result, the Students cannot meet the first element required for injunctive relief; specifically, that there is likelihood of success on the merits of their claim. Accordingly, the Court denies the preliminary injunction motion and must also grant the motion to dismiss.

In their Complaint, the Students alleged that the Handbook is an "implied" contract and contend that the Handbook also creates constitutionally protected rights, though they do not specify whether such rights are ground in liberty or property interests. They also allege that their contractual rights were breached and their due process was violated when Northwest Hendricks School Corporation did not follow the terms of the Handbook when suspending them from athletic activities. Specifically, the Students argue that Northwest Hendricks School Corporation did not follow the Handbook by not scheduling a meeting with their parents, by singling them out for punishment, and arbitrarily imposing a year-long suspension from athletic activities. (Filing No. 14.) However, neither the contractual claim nor due process claim is supported by law.

First, the Students cannot show that the Handbook created an enforceable contract. In fact, the Court has concluded the opposite. *Higginbottom ex rel. Davis v. Keithley*, 103 F. Supp. 2d 1075, 1080-81 (S.D. Ind. 1999) (noting that the Indiana Supreme Court has never held that a contractual relationship exists between a public school and its students or parents and holding that a student guide did not create an enforceable contract under Indiana law). "Indeed, the compulsory nature of public . . . education, which requires public schools to accept enrollment of children in their districts and mandates student attendance, militates against importation of mutual assent and

consideration principles into the public . . . school context." *Id. See also Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 217 (D.N.H. 2009) (holding that no contract arises between a public school and its students as a result of a student handbook); *Borovac v. Churchill Cty. Sch. Dist.*, No. 3:11-cv-336-LRH, 2012 WL 254131, at *3 (D. Nev. 2012) (holding that no contract exists between a public school and it students as a result of a student handbook and that a plaintiff could not, therefore, state a claim for breach of contract); *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty., Okla.*, 960 F. Supp. 2d 1254, 1268 (N.D. Okla 2013) (holding that no contract exists between a public school and it students as a result of a student handbook and collecting cases).

Second, the Students cannot show that the Handbook created a protectable constitutional interest requiring due process. A plaintiff asserting a due process claim must first show that he had a cognizable property interest. *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 686 (7th Cir. 2014); *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014). Here, however, the Students cannot demonstrate such a right, as it is well settled that Indiana public school students have no constitutional right to participate in interscholastic athletics. *Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg by Carlberg*, 694 N.E.2d 222, 242 (Ind. 1997).

At the preliminary injunction hearing, the Students conceded that they had no legal authority to contradict these conclusions. Further, the Students submitted no such legal authority in their briefs. As a result, this Court concludes that the Students' Complaint is unsustainable as pled and dismissal of this case to is appropriate. In addition, this Court concludes that dismissal of the claim should be with prejudice, given the lack of legal authority to support the claims. *See Airborne Beepers & Video, Inc. v. A T & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (noting that courts are instructed to deny leave to amend when an amended pleading would be futile).

Further, since dismissal of this case is appropriate, the pending motion for a preliminary injunction must also be dismissed, as the Students cannot succeed on the merits of their claims.

### IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Keith Poland and K.R.'s Motion for Preliminary Injunction (Filing No. 14).   The Court **GRANTS** Northwest Hendricks School Corporation's Motion to Dismiss (Filing No. 20), and this matter is **DISMISSED with prejudice.**

**SO ORDERED.**

Date: 10/6/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michelle Lynn Cooper
LEWIS & KAPPES PC
mcooper@lewis-kappes.com

Sara R. Blevins
LEWIS & KAPPES PC
sblevins@lewis-kappes.com

Shane Aaron Toland
TOLAND LAW FIRM
shane@shanetoland.com